1
2
3
4
5
6
7
8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   CATALINA ALCARAZ,                              CASE NO. CV F 08-1640 LJO SMS

12                    Plaintiff,         **ORDER ON PLAINTIFF'S MOTION FOR
                                         PRELIMINARY INJUNCTION**
13        vs.                            (Doc. 8-10.)

14   WACHOVIA MORTGAGE
     FSB, et al,
15
                     Defendants.
16   _____/

17                                **INTRODUCTION**

18        Plaintiff Catalina Alcaraz ("Ms. Alcaraz") seeks a preliminary injunction to enjoin the

19   foreclosure of her residence by defendants Wachovia Mortgage, FSB ("Wachovia") and Golden West

20   Savings Association Service Co. ("Golden West").   Wachovia and Golden West (collectively the

21   "Wachovia defendants") contend that Ms. Alcaraz filed her preliminary injunction motion to stall

22   ultimate foreclosure of her residence.   This Court considered Ms. Alcaraz' motion for preliminary

23   injunction on the record and VACATES the January 12, 2009 hearing, pursuant to Local Rule 78-230(h).

24   For the reasons discussed below, this Court DENIES Ms. Alcaraz a preliminary injunction.

25                                **BACKGROUND**

26                            **Ms. Alcaraz' Home Refinance**

27        In December 2006, Ms. Alcaraz obtained a $650,000 loan to refinance her Turlock residence

28   ("property") from World Savings Bank, FSB, which was later renamed Wachovia.   Ms. Alcaraz

                                          1

executed a deed of trust to secure the loan with the property, and Golden West is the trustee under the deed of trust.

At the time of the loan, Ms. Alcaraz was a Senior Loan Officer of Universal Brokers, a mortgage loan brokerage with which Wachovia has no financial interest.  Wachovia solicited Universal Brokers' employees and offered them loans through Wachovia's quick qualifying program, which Ms. Alcaraz claims did not require her "to fully document her income."

Ms. Alcaraz contends that during the loan application period, she did not receive:

1.      Early disclosures or estimates of loan cost;

2.      A "Good Faith Estimate" of her loan costs within three business days of loan application; or

3.      Disclosures regarding the Equal Credit Opportunity, Fair Credit Reporting and Fair Housing Acts.

In her declaration, Ms. Alcaraz states:

> When I applied for the loan, I was not required to provide any documentation of my income, such as wage statements, tax returns, or the like. . . . It is my understanding that my loan application was approved based on my credit score and the information on the loan application alone. . . . During the time I applied for my loan, and before the loan closing, I did not receive any written disclosures of the loan's terms.

Ms. Alcaraz characterizes the loan's interest rate as a "teaser" of only one percent for the first month, "thereafter the rate adjusted higher" and "varied on an index."[1]  Ms. Alcaraz claims that under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1666j), Wachovia did not make further required disclosures each time the interest rate changed.  Ms. Alcaraz declares: "If I fully understood the terms of this loan at the time of closing, I would not have signed for it."  The complaint alleges Ms. Alcaraz "has an adjustable rate loan that was not fully and properly disclosed to her."

---

[1]      Ms. Alcaraz' operative complaint ("complaint") alleges:

> Defendant WACHOVIA's TILA disclosure at the time of loan closing indicated that it offered a loan to Plaintiffs with an Annual Percentage Rate ("APR") of 6.974%.  However, the TILA disclosure payment schedule deceptively showed payments at a rate of 1% of the first 12 months.  In truth, the rate was only good for one month, after which the rate became fully amortizing.  WACHOVIA's disclosure deceptively misleads the borrower into thinking that the true APR of 6.974% is much lower than it actually is.

To oppose Ms. Alcaraz' claims and preliminary injunction motion, the Wachovia defendants have produced several of Ms. Alcaraz' loan documents with her December 20, 2006 signatures and including:

    1.    An Acknowledgment Letter to acknowledge her receipt of a Truth-In-Lending Statement, Good Faith Estimate and Settlement Costs;

    2.    A Notice of Right to Cancel – Refinancing;

    3.    A Federal Truth in Lending Disclosure Required by Regulation Z; and

    4.    A Good Faith Estimate of Settlement Costs.

The Wachovia defendants note that the documents acknowledge her receipt of proper disclosures under TILA and Real Estate Settlement Procedures Act ("RESPA").

**Ms. Alcaraz' Default**

After Ms. Alcaraz' fell behind on her loan payments, the Wachovia defendants recorded a March 7, 2008 notice of default and a July 21, 2008 notice of trustee's sale. Ms. Alcaraz' April 16, 2008 correspondence notes that her job loss is the source of her inability to make house payments. On September 29, 2008, Ms. Alcaraz sent the Wachovia defendants a notice to cancel her loan for inadequate disclosures to rescind the loan and filed her complaint. The Wachovia defendants agreed to forego a trustee's sale of the property to permit Ms. Alcaraz to seek a preliminary injunction. According to Wachovia, Ms. Alcaraz owed $544,143.62 as of December 24, 2008 with interest accruing at $93.14 per day at the present variable rate.

**Ms. Alcaraz' Claims**

The complaint alleges:

    1.    A (first) declaratory relief cause of action that the Wachovia defendants' security interest in the property and the deed of trust are void;

    2.    A (second) contractual breach of implied covenant of good faith and fair dealing cause of action that Wachovia breached the covenant by:

        a.    Preparing a fraudulent loan application and directing Ms. Alcaraz to sign without informing her of the inflated income;

        b.    Failing to verify information;

c.   Approving Ms. Alcaraz' loan application based on false and inaccurate information;

d.   Concealing the loan's true interest rate and that the one percent rate was for one month; and

e.   Failing to disclose that Ms. Alcaraz was going to default because the loan was unaffordable;

3.   A (third) violation of TILA cause of action that Wachovia failed to provide material disclosures required by TILA, falsified Ms. Alcaraz' income on her loan application, failed to consider Ms. Alcaraz' ability to repay the loan, concealed the loan's true APR, and mislead Ms. Alcaraz regarding an equity builder loan program;

4.   A (fourth) violation of RESPA cause of action that Wachovia failed to provide a Good Faith Estimate;

5.   A (fifth) violation of California Civil Code § 1916.7 cause of action that Wachovia failed to provide required adjustable interest rate disclosures and to inform Ms. Alcaraz of advantages and disadvantages of adjustable interest rates and other options;

6.   A (sixth) rescission/cancellation cause of action to rescind Ms. Alcaraz' promissory note;

7.   A (seventh) constructive fraud cause of action that Wachovia breached fiduciary duties by:

a.   Preparing a fraudulent loan application and directing Ms. Alcaraz to sign it without informing her of the inflated income;

b.   Failing to verify information;

c.   Approving Ms. Alcaraz' loan application based on false and inaccurate information;

d.   Failing to consider Ms. Alcaraz' ability to repay the loan;

e.   Concealing the loan's true amount and that the one percent interest rate was for one month; and

f.   Failing to disclose that Wachovia was going to default because the loan was unaffordable;

4

8.    An (eighth) unfair business practices cause of action that Wachovia engaged in unfair business practices by:

    a.    Preparing a fraudulent loan application and directing Ms. Alcaraz to sign it without informing her of the inflated income;

    b.    Failing to verify information;

    c.    Approving Ms. Alcaraz' loan application based on false and inaccurate information;

    d.    Failing to consider Ms. Alcaraz' ability to repay the loan;

    e.    Concealing the loan's true amount and that the one percent interest rate was for one month; and

    f.    Failing to disclose that Wachovia was going to default because the loan was unaffordable;

9.    A (ninth) breach of fiduciary duty cause of action that Wachovia breached fiduciary duties by:

    a.    Inducing Ms. Alcaraz to sign loan documents by concealing and misrepresenting loan terms;

    c.    Preparing a fraudulent loan application and directing Ms. Alcaraz to sign it without informing her of the inflated income;

    c.    Failing to verify information;

    d.    Approving Ms. Alcaraz' loan application based on false and inaccurate information;

    e.    Failing to consider Ms. Alcaraz' ability to repay the loan;

    f.    Concealing the loan's true amount and that the one percent interest rate was for one month;

    g.    Failing to disclose that Wachovia was going to default because the loan was unaffordable;

    h.    Misrepresenting that Ms. Alcaraz was not obligated to proceed with the loan; and

    i.    Qualifying Ms. Alcaraz for an unaffordable loan; and

10.    A (tenth) quiet title cause of action that the Wachovia defendants lack a lien or interest in the property.

The complaint seeks, among other things, general, special and punitive damages, attorney fees, declaratory relief to the effect that Wachovia's security interest in the property is void, and an injunction to prevent foreclosure of the property.

The Wachovia defendants have responded to the complaint with a F.R.Civ.P. 12(b)(6) motion to dismiss its claims and a F.R.Civ.P. 12(f) motion to strike punitive damages claims. This Court elected to proceed first with Ms. Alcaraz' preliminary injunction motion and will address the Wachovia defendants' motions to dismiss and strike as necessary.

## DISCUSSION

### Preliminary Injunction Standards

"A preliminary injunction is not a preliminary adjudication on the merits, but a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Textile Unlimited, Inc. v. A.BMH and Company, Inc.*, 240 F.3d 781, 786 (9th Cir. 2001) (citing *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984)). The traditional equitable criteria for granting preliminary injunctive relief are:

1.    A strong likelihood of success on the merits;

2.    The possibility of irreparable injury to the moving party if injunctive relief is denied;

3.    A balance of hardships favoring the moving party; and

4.    Advancement of public interest.

*Textile Unlimited*, 240 F.3d at 786 (citing *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980)).

"In this circuit, the moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." *Los Angeles Mem' Coliseum Comm'n*, 634 F.2d at 1201.

Ms. Alcaraz argues that she is entitled to a preliminary injunction in that she faces irreparable harm from foreclosure of her residence, that she will succeed on the merits, and that there are "serious

6

questions" raised by the Wachovia defendants' trustee sale.  The Wachovia defendants contend that Ms. Alcaraz should remain accountable for her loan which she claims she is no longer able to pay due to job loss.

## Irreparable Harm

Ms. Alcaraz contends that foreclosure of a home "is conclusively irreparable harm."  "Losing one's home through foreclosure is an irreparable injury."  *Wrobel v. S.L. Pope & Assocs.*, 2007 WL 2345036, *1 (S.D. Cal. 2007); *see Cronkhite v. Kemp*, 741 F.Supp. 822, 825 (E.D.Wash.1989) (irreparable injury established where deed of trust contained no redemption period, and foreclosure would result in plaintiff losing home and all equity).  Ms. Alcaraz notes that she unlikely will be able to purchase another home in that "this litigation poses serious, unjustifiable threats to Ms. Alcaraz' credit rating, which will make it difficult for her to buy another house."

Clearly, loss of a home is a serious injury.  However, the record suggests that Ms. Alcaraz sought a loan beyond her financial means and expectation of job loss.  Such resulting harm does not alone entitle her to injunctive relief.

## Success On Merits

Ms. Alcaraz argues that she will succeed on her federal and state claims against the Wachovia defendants.

### *TILA Violation*

Ms. Alcaraz notes that her Wachovia loan required TILA compliance.  TILA requires that loan documents state specifically the last date on which a borrower may rescind the loan agreement without penalty. *Semar v. Platte Valley Federal Sav. & Loan Ass'n,* 791 F.2d 699, 701 (9th Cir. 1986) (citing15 U.S.C. § 1635(a)[2] and former 12 C.F.R. § 226.23(b)(5).[3]  TILA's "buyer's remorse" provision allows

---

[2]    15 U.S.C. § 1635(a) addresses disclosure of right to rescind and provides:

  Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by

borrowers three business days to rescind, without penalty, a consumer loan that uses their principal

dwelling as security. *Semar*, 791 F.2d at 701; 15 U.S.C. § 1635(a). TILA and its regulations, issued by

the Federal Reserve System, 12 C.F.R. §§ 226.1- .29 ("Regulation Z"), require the lender to provide a

form stating the specific date on which the three-day rescission period expires. *Semar*, 791 F.2d at 701

(citing 15 U.S.C. § 1635(a)).  If the lending institution omits the expiration date and fails to cure the

omission by subsequently providing the information, the borrower may rescind the loan within three

years after it was consummated.  *Semar*, 791 F.2d at 701-702 (citing 15 U.S.C. § 1635(f)).[4]

Further required lender disclosures include that the borrowers could lose their home if they do

not meet their loan obligations, the percentage rate, the amount of monthly payments, and in the case

---

notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

[3]     Former 12 C.F.R. § 226.23(b) provided:

(b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

....

(5) The date the rescission period expires.

[4]     15 U.S.C. § 1635(f) provides:

An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor, except that if (1) any agency empowered to enforce the provisions of this subchapter institutes a proceeding to enforce the provisions of this section within three years after the date of consummation of the transaction, (2) such agency finds a violation of this section, and (3) the obligor's right to rescind is based in whole or in part on any matter involved in such proceeding, then the obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the earlier sale of the property, or upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later.

of adjustable rate loans, that the interest rate and payment could increase. *Pacific Shore Funding v. Lozo*, 138 Cal.App.4th 1342, 1349, 42 Cal.Rptr.3d 283 (2006) (citing 15 U.S.C. § a639(a)(1) & (a)(2)). 12 C.F.R. § 226.23(a)(3) defines "material disclosures" to include the annual percentage rate, the finance charge, the amount financed, the total payments, and the payment schedule. If any required disclosures are not made, the borrower's right to rescind is extended from three days to three years after the date of consummation of the transaction. *Pacific Shore Funding*, 138 Cal.App.4th at 1350, 42 Cal.Rptr.3d 283. A "single violation of TILA, whether it be substantive or technical, extends a borrower's period for rescission." *Wiggins v. Avco Financial Services*, 62 F.Supp.2d 90, 94 (D.D.C. 1992).

Ms. Alcaraz contends that the APR in the TILA disclosure was calculated on a one percent interest rate for an entire year although the "teaser" one percent rate was for only one month to result in "substantial under-disclosure." Ms. Alcaraz seeks to invoke a three-year extension to rescind based on an under-disclosed APR. Ms. Alcaraz concludes that upon rescission of her loan, the security interest in her residence is "automatically void" under 15 U.S.C. § 1635(b) ("When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission.")

The Truth In Lending Disclosure, which Ms. Alcaraz signed to acknowledge receipt, indicates a 6.974 annual percentage rate and monthly payments increasing annually for the loan's life. For instance, the disclosure reveals that on February 1, 2008, Ms. Alcaraz' payments increased from $1,762.20 to $1,894.37. Moreover, the Notice of Right to Cancel – Refinancing, which Ms. Alcaraz signed to acknowledge receipt, provides a three-day cancellation period. Wachovia has supplied Ms. Alcaraz' Good Faith Estimate. The record suggests that Ms. Alcaraz' TILA violation claims are dubious at best.

### State Law Rescission Based On Fraud

Ms. Alcaraz argues that her state law claims provide "independent grounds" to rescind the loan and void the security interest in her residence. Ms. Alcaraz claims the loan is rescindable under California Civil Code section 1689 in that her consent "was given by mistake, or obtained through duress, menace, fraud or undue influence." Ms. Alcaraz focuses on "actual fraud" which requires: (1)

a false representation or concealment of a material fact, (2) made with knowledge of its falsity or without sufficient knowledge on the subject to warrant a representation, (3) with the intent to induce the person to whom it is made to act upon it; and such person must (4) act in reliance upon the representation (5) to his damage. *South Tahoe Gas Co. v. Hofmann Land Improvement Co.,* 25 Cal.App.3d 750, 765, 102 Cal.Rptr. 286 (1972). Ms. Alcaraz argues that Wachovia made a material false statement about the APR in its inaccurate disclosure to persuade Ms. Alcaraz to agree to the loan and that Ms. Alcaraz relied on documentation to determine if she could afford the loan and thus proceed with it.

The Wachovia defendants respond that Ms. Alcaraz' rescission claim "is barred by her failure to even offer to tender the loan proceeds back to Wachovia."

"If . . . it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after." *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1173 (9th Cir. 2003) (prior to ordering rescission based on lender's alleged TILA violations, court could require borrowers to prove ability to repay loan proceeds). The equitable maxim is that "a court of equity will not order a useless act performed." *FPCI RE-HAB 01 v. E & G Investments, Ltd.,* 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157 (1989) "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen v. American Sav. & Loan Assn.,* 15 Cal.App.3d 112, 92 Cal.Rptr. 851 (1971).

The record reflects that Ms. Alcaraz is unable to tender loan proceeds to entitle her to rescission relief.

The Wachovia defendants further argue that the Home Owners Loan Act ("HOLA"), 12 U.S.C. §§ 1461, et seq., and its regulations preempt Ms. Alcaraz' state law claims, including rescission.

Congress enacted HOLA "to charter savings associations under federal law," *Bank of America v. City and County of S.F.*, 309 F.3d 551, 559 (9th Cir. 2002), *cert. denied*, 538 U.S. 1069, 123 S.Ct. 2220 (2003), and "to restore public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide 'best practices,'" *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 160-161, 102 S.Ct. 3014 (1982). HOLA and its regulations are a "radical and comprehensive response to the inadequacies of the existing state system," and "so

1   pervasive as to leave no room for state regulatory control." *Conference of Fed. Sav. & Loan Ass'ns v.*

2   *Stein*, 604 F.2d 1256, 1257, 1260 (9th Cir. 1979), *aff'd*, 445 U.S. 921, 100 S.Ct. 1304. "[B]ecause there

3   has been a history of significant federal presence in national banking, the presumption against

4   preemption of state law is inapplicable." *Bank of Am.*, 309 F.3d at 559.

5          Through HOLA, Congress gave the Office of Thrift Supervision ("OTS") broad authority to issue

6   regulations governing thrifts. *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008)

7   (citing 12 U.S.C. § 1464). OTS promulgated 12 C.F.R. § 560.2 ("section 560.2") as a preemption

8   regulation, which "'has no less preemptive effect than federal statutes.'" *Silvas*, 514 F.3d at 1005

9   (quoting *de la Cuesta*, 458 U.S. at 153, 102 S.Ct. 3014)).

10         Section 560.2(a) provides in pertinent part:

11         . . .OTS hereby occupies the entire field of lending regulation for federal savings
           associations. OTS intends to give federal savings associations maximum flexibility to
12         exercise their lending powers in accordance with a uniform federal scheme of regulation.
           Accordingly, federal savings associations may extend credit as authorized under federal
13         law, including this part, without regard to state laws purporting to regulate or otherwise
           affect their credit activities, except to the extent provided in paragraph (c) of this section
14         . . .

15         Section 560.2(b) provides "the types of state laws preempted" by section 560.2(a) include:

16                (4) The terms of credit, including amortization of loans and the deferral and
           capitalization of interest and adjustments to the interest rate, balance, payments due, or
17         term to maturity of the loan, including the circumstances under which a loan may be
           called due and payable upon the passage of time or a specified event external to the loan
18         . . .

19                (9) Disclosure and advertising, including laws requiring specific statements,
           information, or other content to be included in credit application forms, credit
20         solicitations, billing statements, credit contracts, or other credit-related documents and
           laws requiring creditors to supply copies of credit reports to borrowers or applicants . .
21         .

22         As noted by the Ninth Circuit Court of Appeals in *Silvas*, 514 F.3d at 1005, OTS has outlined

23  a proper analysis in evaluating whether a state law is preempted under the regulation:

24         When analyzing the status of state laws under § 560.2, the first step will be to determine
           whether the type of law in question is listed in paragraph (b). If so, the analysis will end
25         there; the law is preempted. If the law is not covered by paragraph (b), the next question
           is whether the law affects lending. If it does, then, in accordance with paragraph (a), the
26         presumption arises that the law is preempted. This presumption can be reversed only if
           the law can clearly be shown to fit within the confines of paragraph (c). For these
27         purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be
           resolved in favor of preemption.

28

                                                      11

1    OTS, Final Rule, 61 Fed.Reg. 50951, 50966-67 (Sept. 30, 1996).

2        Section 560.2(c) provides that the types of state laws "not preempted to the extent that they only

3    incidently affect the lending operations of Federal savings associations" include, contract, commercial,

4    real property and tort law.

5        The Wachovia defendants note that if preemption arises under section 560.2(b), section

6    560.2(c)'s carve out "does not come into play."  The Wachovia defendants point to *Silvas*, 514 F.3d at

7    1006, where the Ninth Circuit applied section 560.2(b) preemption to claims under California's Unfair

8    Competition Law, Cal. Bus. & Prof. Code, §§ 17200, et seq., and explained: "We do not reach the

9    question of whether the law fits within the confines of [section 560.2(c)] because Appellants' claims are

10   based on types of laws listed in paragraph (b) of 560.2, specifically (b)(9) and (b)(5)."

11       HOLA preemption undercuts Ms. Alcaraz' state law claims, including rescission based on fraud.

12   Ms. Alcaraz fails to demonstrate a strong likelihood or probable success on the merits of her claims

13   which she highlights here.

14                          **Balance Of Hardships**

15       Ms. Alcaraz argues that she meets the alternative preliminary injunction test in that her claims

16   raise "serious issues of the validity of the Wachovia loans and the balance of hardships weighs sharply

17   in Ms. Alcaraz' favor."  Ms. Alcaraz notes that the "looming foreclosure gives Wachovia an undeserved

18   strong hand" to attempt "to force an unfair settlement."  Ms. Alcaraz claims an absence of hardship to

19   Wachovia from an preliminary injunction it that it "holds a deed of trust" with a "pending foreclosure"

20   and no evidence of damage to the property pending trial.

21       The Wachovia defendants respond that "any reasonable balancing would conclude that the

22   foreclosure sale should be allowed" in that Ms. Alcaraz has made no payments in more than a year and

23   that her debt exceeds $544,000 with interest accruing at a $90 plus per day rate.  The Wachovia

24   defendants point out that Ms. Alcaraz has lived "payment free for over a year at Wachovia's expense."

25   The Wachovia defendants conclude that given the complaint's "serious questions about the factual

26   accuracy" and Ms. Alcaraz' failure to "do equity" or to offer to do so, the scales dip in the Wachovia

27   defendants' favor.

28       This Court agrees with the Wachovia defendants and their assessment that this action "is a

                                          12

1 transparent attempt to 'buy time'" by stalling off first the foreclosure sale."  Ms. Alcaraz fails to

2 demonstrate that the balance of hardships weighs in her favor given her continuing inability to make

3 payments toward her sizeable debt.  Postponing Wachovia's lawful relief offers nothing to tip the

4 balance in favor of Ms. Alcaraz.

5 **Bond**

6       Ms. Alcaraz requests that if she is granted a preliminary injunction, this Court require no bond

7 or a "nominal" bond of her in that Wachovia has "sufficient security to ensure that its interests will not

8 be affected until this matter is resolved at trial."  Ms. Alcaraz notes that "she seeks to keep the home

9 after vindicating her rights" to suggest she will maintain it pending resolution of this action.

10       F.R.Civ.P. 65(c) addresses security upon issuance of a preliminary injunction and requires

11 "security in an amount that the court considers proper to pay the costs and damages sustained by any

12 party found to have been wrongfully enjoined or restrained."  F.R.Civ.P. 65(c) "invests the district court

13 'with discretion as to the amount of security required, *if any*.'"  *Jorgensen v. Cassidy*, 320 F.3d 906, 919

14 (9th Cir. 2003) (italics in original; quoting *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir.

15 1999)).  A district court may forego a bond "when it concludes there is no realistic likelihood of harm

16 to the defendant from enjoining his or her conduct."  *Jorgensen*, 320 F.3d at 919.

17       Given the absence of a preliminary injunction, a bond is irrelevant.

18 **CONCLUSION AND ORDER**

19       For the reasons discussed above, this Court:

20     1.     DENIES Ms. Alcaraz a preliminary injunction;

21     2.     ORDERS Ms. Alcaraz, no later than January 13, 2009, to file and serve opposition

22           papers to the Wachovia defendants' F.R.Civ.P. 12(b)(6) motion to dismiss and

23           F.R.Civ.P. 12(f) motion to strike, or a statement that Ms. Alcaraz abandons her claims;

24     3.     ORDERS the Wachovia defendants, no later than January 20, 2009, to file reply papers,

25           if any, for their F.R.Civ.P. 12(b)(6) motion to dismiss and F.R.Civ.P. 12(f) motion to

26 / / /

27 / / /

28 / / /

13

strike;[5] and

4.      **ADMONISHES Ms. Alcaraz that failure to comply with this order will result in dismissal of this action.**

IT IS SO ORDERED.

**Dated:    January 6, 2009**                        /s/ Lawrence J. O'Neill
                                                            UNITED STATES DISTRICT JUDGE

---

[5]      This Court will determine the Wachovia defendants' F.R.Civ.P. 12(b)(6) motion to dismiss and F.R.Civ.P. 12(f) motion to strike on the record and without a hearing, pursuant to Local Rule 78-230(h).