1
2
3
4
5
6
7

8        **IN THE UNITED STATES DISTRICT COURT**

9        **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   CATALINA ALCARAZ,                          CASE NO. CV F 08-1640 LJO SMS

12              Plaintiff,              _____**ORDER ON DEFENDANTS' F.R.Civ.P. 12(b)(6)**
                                               **AND F.R.Civ.P. 12(f) MOTIONS**
13        vs.                                  (Docs. 6, 7.)

14   WACHOVIA MORTGAGE,
     FSB, et al.,
15
                Defendants.
16   _____/

17                              **INTRODUCTION**

18        Defendants Wachovia Mortgage, FSB ("Wachovia") and Golden West Savings Association

19   Service Co. ("Golden West") seek to dismiss plaintiff Catalina Alcaraz' fraudulent home loan,

20   rescission, and injunctive relief claims as barred for failure to tender indebtedness, preempted by federal

21   law and insufficiently plead to satisfy F.R.Civ.P. 9(b).  Wachovia and Golden West (collectively the

22   "Wachovia defendants") further seek to strike Ms. Alcaraz' punitive damages claims and supporting

23   allegations for failure to allege facts to satisfy California Civil Code section 3294 ("section 3294").  Ms.

24   Alcaraz responds that her claims are sufficiently pled and not barred by the Wachovia defendants' legal

25   arguments.  This Court considered the Wachovia defendants' F.R.Civ.P. 12(b)(6) motion to dismiss and

26   F.R.Civ.P. 12(f) motion to strike on the record, pursuant to Local Rule 78-230(h).  For the reasons

27   discussed below, this Court DISMISSES several of Ms. Alcaraz's claims and STRIKES Ms. Alcaraz'

28   punitive damages claims and supporting allegations.

                                              1

1

2

### BACKGROUND

### Ms. Alcaraz' Home Refinance

3    In December 2006, Ms. Alcaraz obtained a $650,000 loan to refinance her Turlock residence

4    ("property") from World Savings Bank, FSB, which was later renamed Wachovia.  Ms. Alcaraz

5    executed a deed of trust to secure the loan with the property, and Golden West is the trustee under the

6    deed of trust.

7    At the time of the loan, Ms. Alcaraz was an employee of Universal Brokers, a mortgage loan

8    brokerage with which Wachovia has no financial interest.  Wachovia solicited Universal Brokers'

9    employees and offered them loans through Wachovia's quick qualifying program, which Ms. Alcaraz

10   claims did not require her "to fully document her income" or analyze her "ability to repay the loan."

11   Ms. Alcaraz contends that during the loan application period, she did not receive:

12       1.    Early disclosures or estimates of loan cost;

13       2.    A "Good Faith Estimate" of her loan costs within three business days of loan application;

14             or

15       3.    Disclosures regarding the Equal Credit Opportunity, Fair Credit Reporting and Fair

16             Housing Acts.

17   Ms. Alcaraz characterizes the loan's interest rate as a "teaser" of only one percent for the first

18   month, "thereafter the rate adjusted higher" and "varied on an index." Ms. Alcaraz' operative complaint

19   ("complaint") alleges:

20       Defendant WACHOVIA's TILA[1] disclosure at the time of loan closing indicated
         that it offered a loan to Plaintiffs with an Annual Percentage Rate ("APR") of 6.974%.

21       However, the TILA disclosure payment schedule deceptively showed payments at a rate
         of 1% of the first 12 months.  In truth, the rate was only good for one month, after which

22       the rate became fully amortizing.  WACHOVIA's disclosure deceptively misleads the
         borrower into thinking that the true APR of 6.974% is much lower than it actually is.

23

24   Ms. Alcaraz claims that under TILA, Wachovia did not make further required disclosures each time the

25   interest rate changed.  The complaint alleges Ms. Alcaraz "has an adjustable rate loan that was not fully

26   and properly disclosed to her."

27

28       [1]    TILA is the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1666j.

**Ms. Alcaraz' Default**

After Ms. Alcaraz' fell behind on her loan payments, Wachovia and Golden West recorded a March 7, 2008 notice of default and a July 21, 2008 notice of trustee's sale. On September 29, 2008, Ms. Alcaraz sent Wachovia and Golden West a notice to cancel her loan for inadequate disclosures and to rescind the loan and filed her complaint. Wachovia and Golden West agreed to forego a trustee's sale of the property to permit Ms. Alcaraz to seek a preliminary injunction, which this Court denied by its prior order.

**Ms. Alcaraz' Claims**

The complaint alleges:

1. A (first) declaratory relief cause of action that the Wachovia defendants' security interest in the property and the deed of trust are void;

2. A (second) contractual breach of implied covenant of good faith and fair dealing cause of action that Wachovia breached the covenant by:

   a. Preparing a fraudulent loan application and directed Ms. Alcaraz to sign without informing her of the inflated income;

   b. Failing to verify information;

   c. Approving Ms. Alcaraz' loan application based on false and inaccurate information;

   d. Concealing the loan's true interest rate and that the one percent rate was for one month; and

   e. Failing to disclose that Ms. Alcaraz was going to default because the loan was unaffordable;

3. A (third) violation of TILA cause of action that Wachovia failed to provide material disclosures required by TILA, falsified Ms. Alcaraz' income on her loan application, failed to consider Ms. Alcaraz' ability to repay the loan, concealed the loan's true APR, and mislead Ms. Alcaraz regarding an equity builder loan program;

4. A (fourth) violation of Real Estate Settlement Procedures Act ("RESPA") cause of action that Wachovia failed to provide a Good Faith Estimate;

3

5. A (fifth) violation of California Civil Code § 1916.7 cause of action that Wachovia failed to provide required adjustable interest rate disclosures and to inform Ms. Alcaraz of advantages and disadvantages of adjustable interest rates and other options;

6. A (sixth) rescission/cancellation cause of action to rescind Ms. Alcaraz' promissory note;

7. A (seventh) constructive fraud cause of action that Wachovia breached fiduciary duties by:

    a. Preparing a fraudulent loan application and directing Ms. Alcaraz to sign it without informing her of the inflated income;

    b. Failing to verify information;

    c. Approving Ms. Alcaraz' loan application based on false and inaccurate information;

    d. Failing to consider Ms. Alcaraz' ability to repay the loan;

    e. Concealing the loan's true amount and that the one percent interest rate was for one month; and

    f. Failing to disclose that Wachovia was going to default because the loan was unaffordable;

8. An (eighth) unfair business practices cause of action that Wachovia engaged in unfair business practices by:

    a. Preparing a fraudulent loan application and directing Ms. Alcaraz to sign it without informing her of the inflated income;

    b. Failing to verify information;

    c. Approving Ms. Alcaraz' loan application based on false and inaccurate information;

    d. Failing to consider Ms. Alcaraz' ability to repay the loan;

    e. Concealing the loan's true amount and that the one percent interest rate was for one month; and

    f. Failing to disclose that Wachovia was going to default because the loan was unaffordable;

4

9.      A (ninth) breach of fiduciary duty cause of action that Wachovia breached fiduciary duties by:

    a.      Inducing Ms. Alcaraz to sign loan documents by concealing and misrepresenting loan terms;

    b.      Preparing a fraudulent loan application and directing Ms. Alcaraz to sign it without informing her of the inflated income;

    c.      Failing to verify information;

    d.      Approving Ms. Alcaraz' loan application based on false and inaccurate information;

    e.      Failing to consider Ms. Alcaraz' ability to repay the loan;

    f.      Concealing the loan's true amount and that the one percent interest rate was for one month; and

    g.      Failing to disclose that Wachovia was going to default because the loan was unaffordable;

    h.      Misrepresenting that Ms. Alcaraz was not obligated to proceed with the loan; and

    i.      Qualifying Ms. Alcaraz for an unaffordable loan; and

10.     A (tenth) quiet title cause of action that Wachovia and Golden West lack a lien or interest in the property.[2]

The complaint seeks, among other things, general, special and punitive damages, attorney fees, declaratory relief to the effect that Wachovia's security interest in the property is void, and an injuction to prevent foreclosure of the property.

      The Wachovia defendants' F.R.Civ.P. 12(b)(6) motion is unclear as to whether it seeks to dismiss all of the causes of action or merely the causes of action based on state law.  The Wachovia defendants seek dismissal on grounds that:

1.      Ms. Alcaraz' failure to tender indebtedness bars her claims for rescission, injunctive

---

[2]      In her opposition papers, Ms. Alcaraz summarizes her complaint to allege that Wachovia "induced her to sign for a refinance loan without making proper disclosures of its items; misled her about the terms of the loan; and disregarded her ability to repay the loan so it could obtain a high interest rate and fees."

1    relief and quiet title to the property;

2        2.    The Home Owners Loan Act ("HOLA"), 12 U.S.C. §§ 1461, et seq., and its regulations

3              preempt Ms. Alcaraz state law claims; and

4        3.    Ms. Alcaraz' common law fraud claims fail to satisfy F.R.Civ.P. 9(b) pleading

5              requirements.

6    The Wachovia defendants further seek to strike the complaint's punitive damages claims and supporting

7    allegations for failure to satisfy section 3294.

8                          **THE WACHOVIA DEFENDANTS' MOTION TO DISMISS**

9                                **F.R.Civ.P. 12(b)(6) Motion Standards**

10       A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set

11   forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception

12   of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not

13   whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

14   support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco

15   Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where

16   there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

17   cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling

18   v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  F.R.Civ.P. 12(b)(6) dismissal is proper

19   when "plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

20   *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102 (1957).

21       In resolving a F.R.Civ.P. 12(b)(6) motion, the court must:  (1) construe the complaint in the light

22   most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

23   whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty

24   Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is "free to ignore legal

25   conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in

26   the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th

27   Cir. 2003) (citation omitted).  A court need not permit an attempt to amend a complaint if "it determines

28   that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc.*

1   *v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). "While a complaint attacked by a

2   Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

3   provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

4   formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127

5   S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

6       With these standards in mind, this Court turns to the Wachovia defendants' challenges to Ms.

7   Alcaraz' claims.

8                                    **<u>Tender Indebtedness</u>**

9       The Wachovia defendants argue that Ms. Alcaraz is not entitled to injunctive relief or rescission

10  in the absence of an allegation that she "is truly able and willing to do 'equity' by tendering the full

11  indebtedness."   The Wachovia defendants note the complaint's allegation that Ms. Alcaraz lacks

12  sufficient income "to afford or pay the loan" to thus acknowledge her inability to tender the full debt.

13      Ms. Alcaraz responds that a F.R.Civ.P. 12(b)(6) motion is improper "to determine Ms. Alcaraz'

14  tender options or speculate about the possibility a third party could extend her financing for her home."

15      "If . . . it is clear from the evidence that the borrower lacks capacity to pay back what she has

16  received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what

17  it could do after." *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1173 (9th Cir. 2003) (prior to

18  ordering rescission based on lender's alleged TILA vilations, court could require borrowers to prove

19  ability to repay loan proceeds).  The equitable maxim is that "a court of equity will not order a useless

20  act performed." *FPCI RE-HAB 01 v. E & G Investments, Ltd.,* 207 Cal.App.3d 1018, 1021, 255

21  Cal.Rptr. 157 (1989)  "A valid and viable tender of payment of the indebtedness owing is essential to

22  an action to cancel a voidable sale under a deed of trust." *Karlsen v. American Sav. & Loan Assn.,* 15

23  Cal.App.3d 112, 92 Cal.Rptr. 851 (1971).

24      This Court is troubled that the Wachovia defendants attempt to rely on a factual issue to defeat

25  Ms. Alcaraz' injunctive relief and rescission claims.   Nonetheless, the complaint fails to allege Ms.

26  Alcaraz' ability to tender to entitle her to her requested relief.  As such, this Court is not in a position, at this

27  time, to dismiss Ms. Alcaraz' claims based on the tender issue but admonishes Ms. Alcaraz, subject to

28  F.R.Civ.P. 11(b) requirements, to address the issue if she elects to amend her complaint.

## HOLA Preemption

The Wachovia defendants argue that HOLA and its regulations "eliminate any of plaintiff's statutory claims, other than those based upon Federal laws."

Congress enacted HOLA "to charter savings associations under federal law," *Bank of America v. City and County of S.F.*, 309 F.3d 551, 559 (9th Cir. 2002), *cert. denied*, 538 U.S. 1069, 123 S.Ct. 2220 (2003), and "to restore public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide 'best practices,'" *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 160-161, 102 S.Ct. 3014 (1982).  HOLA and its regulations are a "radical and comprehensive response to the inadequacies of the existing state system," and "so pervasive as to leave no room for state regulatory control." *Conference of Fed. Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257, 1260 (9th Cir. 1979), *aff'd*, 445 U.S. 921, 100 S.Ct. 1304.  "[B]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable." *Bank of Am.*, 309 F.3d at 559.

Through HOLA, Congress gave the Office of Thrift Supervision ("OTS") broad authority to issue regulations governing thrifts.  *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008) (citing 12 U.S.C. § 1464).  OTS promulgated 12 C.F.R. § 560.2 ("section 560.2") as a preemption regulation, which "'has no less preemptive effect than federal statutes.'" *Silvas*, 514 F.3d at 1005 (quoting *de la Cuesta*, 458 U.S. at 153, 102 S.Ct. 3014)).

Section 560.2(a) provides in pertinent part:

> . . .OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section . . .

Section 560.2(b) provides "the types of state laws preempted" by section 560.2(a) include:

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan . . .

8

(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants . . .

As noted by the Ninth Circuit Court of Appeals in *Silvas*, 514 F.3d at 1005, OTS has outlined a proper analysis in evaluating whether a state law is preempted under the regulation.

When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

OTS, Final Rule, 61 Fed.Reg. 50951, 50966-67 (Sept. 30, 1996).

Section 560.2(c) provides that the types of state laws "not preempted to the extent that they only incidently affect the lending operations of Federal savings associations" include, contract, commercial, real property and tort law.

The Wachovia defendants note that if preemption arises under section 560.2(b), section 560.2(c)'s carve out "does not come into play."  The Wachovia defendants point to *Silvas*, 514 F.3d at 1006, where the Ninth Circuit applied section 560.2(b) preemption to claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, §§ 17200, et seq., and explained: "We do not reach the question of whether the law fits within the confines of [section 560.2(c)] because Appellants' claims are based on types of laws listed in paragraph (b) of 560.2, specifically (b)(9) and (b)(5)."

The Wachovia defendants do not identify Ms. Alcaraz' specific causes of action which they claim are preempted and broadly conclude: "Everything Wachovia is accused of doing relates to the origination of the loan and related disclosures."  The Wachovia defendants appear to make a blanket argument that section 560.2(b)(4) and (b)(9) apply to preempt all of Ms. Alcaraz' state law causes of action.  As such, this Court surmises that the Wachovia defendants take the position that all but Ms. Alcaraz' (third) TILA and (fourth) RESPA causes of action are preempted.

Ms. Alcaraz notes that the complaint alleges state common law actions sounding in contract and

1  real property to avoid HOLA preemption.  Mr. Alcaraz notes that Golden West is not a federal savings

2  bank, and thus Ms. Alcaraz declaratory relief and quiet title claims against it are not barred.

3       The Wachovia defendants fail to explain how the individual state common law causes of action

4  are preempted, and this Court is in a position to make neither arguments for the Wachovia defendants

5  nor a blanket conclusion that HOLA preempts all of Ms. Alcaraz' state law causes of action.  Only Ms.

6  Alcaraz' (eighth) UCL unfair business practices cause of action is subject to a state law subject to HOLA

7  preemption.  Her other state law causes of action arise from common law, not a statute or other

8  regulation subject to preemption.  As such, only the (eighth) UCL unfair business practices cause of

9  action is dismissed with prejudice as preempted by HOLA.

10                                              **Fraud**

11       Without identifying a specific cause of action, the Wachovia defendants argue that "the common

12  law fraud claims are not properly pleaded."  The Wachovia defendants appear to target the complaint's

13  (seventh) constructive fraud cause of action.  The Wachovia defendants point to F.R.Civ.P. 9(b) which

14  requires at party to "state with particularity the circumstances constituting fraud."[3]

15       Ms. Alcaraz defends her fraud claims on grounds that the complaint alleges "that the statements

16  were made by Wachovia's representatives before and during the loan process" and "that Wachovia's

17  disclosures were false because they misstated the costs of the loan."

18       A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P.

19  9(b)'s heightened pleading requirements.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir.

20  2003).  A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with

21  particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state

22  a claim.  *Vess*, 317 F.3d at 1107.  As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a

23  short and plain statement of the claim showing that the pleader is entitled to relief."

24       F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's

25

26       [3]       F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court
will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the
27  Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess
v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.
28  1995)(italics in original)).

requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery."  *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).  "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)).  The Ninth Circuit Court of Appeals has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud.  The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud.  The statement in question must be false to be fraudulent.  Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . .  The plaintiff must set forth what is false or misleading about a statement, and why it is false.  In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .
>
> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) ("fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *Neubronner*, 6 F.3d at 672 ("complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity").

The Wachovia defendants raise valid points regarding the absence of specific allegations to support the (seventh) constructive fraud cause of action.  The gist of the claim is that Wachovia "prepared a fraudulent loan application and directed Plaintiff to sign without informing her of the inflated income."

The elements of fraud under California law are:

1.    Misrepresentation (false representation, concealment or nondisclosure);

2.    Knowledge of falsity ("scienter");

3.    Intent to defraud, i.e., to induce reliance;

4.    Justifiable reliance; and

1          5.       Resulting damage.

2    *City Solutions, Inc. v. Clear Channel Communications, Inc.*, 365 F.3d 835, 839 (9th Cir. 2004).

3          The Wachovia defendants point to an absence of false representation allegations.  The Wachovia

4    defendants note that the complaint's allegation that Ms. Alcaraz was "induced" to fill out a loan

5    application defeats the justifiable reliance element.   The Wachovia defendants continue that

6    "enforcement of a loan according to its terms cannot state a fraud claim."

7          This Court agrees with the Wachovia defendants that the complaint lacks sufficient details of

8    alleged fraud to permit Wachovia to adequately defend the constructive fraud claim.  The complaint

9    identifies no Wachovia personnel or representatives who allegedly committed fraud.  The time, place

10   and specific nature of fraudulent activities and benefits are missing.  The complaint's conclusory

11   allegations fail to satisfy F.R.Civ.P. 9(b) to support a constructive fraud cause of action.  As such, the

12   (seventh) constructive fraud cause of action is dismissed with leave to amend.

13                                 **Unclean Hands**

14         The Wachovia defendants argue that since Ms. Alcaraz acknowledges her fraud to obtain the

15   loan, the doctrine of unclean hands bars Ms. Alcaraz "from obtaining legal or equitable relief from a

16   transaction spoiled with his or her dirty conduct."   The Wachovia defendants rely on the complaint's

17   allegation that Ms. Alcaraz signed "a 'stated income' loan application that was deceptive and fraudulent

18   because Plaintiff's true income was not listed on the application."  As such, Wachovia defendants note

19   that "but for her admitted deceit, she would not have obtained the loan."

20         Ms. Alcaraz responds that she did not admit fraud in that the complaint alleges that "the

21   application form was deceptive and fraudulent because it did not call for a description of her income

22   with the specificity that Wachovia would need to determine the appropriateness of the loan."

23         The unclean hands defense may be inappropriate "if the misconduct relates directly to the

24   controversy immediately involved in the injunction suit and is of a character that renders the plaintiff's

25   interests undeserving of injunctive protection. [¶]  We glean from this sparse product that whether there

26   is a bar depends upon the analogous case law, the nature of the misconduct, and the relationship of the

27   misconduct to the claimed injuries."  *Blain v. Doctor's Co.,* 222 Cal.App.3d 1048, 1060, 272 Cal.Rptr.

28   250 (1990).

                                        12

1    The Wachovia defendants fail to explain to which claims and how the unclean hands defense

2  may apply.  Moreover, its application addresses factual issues beyond the face of the complaint and in

3  turn a F.R.Civ.P. 12(b)(6) motion.  The unclean defense defeats none of Ms. Alcaraz' claims.

4                                            **Fiduciary Duty**

5    The Wachovia defendants fault the (ninth) breach of fiduciary duty cause of action in the absence

6  of such a duty owed her "as a matter of law."  Ms. Alcaraz responds that the complaint alleges that

7  "Wachovia was acting beyond the typical lender-borrower relationship in that it did induce her to enter

8  into the loan transaction."

9    "The relationship between a lending institution and its borrower-client is not fiduciary in nature."

10  *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1093, n. 1, 283 Cal.Rptr. 53 (1991)

11  (citing *Price v. Wells Fargo Bank,* 213 Cal.App.3d 465, 476-478, 261 Cal.Rptr. 735 (1989)).  A

12  commercial lender is entitled to pursue its own economic interests in a loan transaction. *Nymark*, 231

13  Cal.App.3d at 1093, n. 1, 283 Cal.Rptr. 53(citing *Kruse v. Bank of America,* 202 Cal.App.3d 38, 67, 248

14  Cal.Rptr. 217 (1988)).

15    Ms. Alcaraz is unable to overcome the absence of a fiduciary duty between her and Wachovia

16  to resurrect the (ninth) breach of fiduciary duty cause of action.  The claim is barred as a matter of law

17  under the alleged facts, notwithstanding Ms. Alcaraz' vague claim that she was induced to enter the loan

18  transaction.

19                                **Good Faith And Fair Dealing**

20    The Wachovia defendants challenge the (second) contractual breach of implied covenant of good

21  faith and fair dealing cause of action on grounds that the applicable "express terms do not permit room

22  for an implied covenant" to rewrite the loan contract.  The Wachovia defendants note that the covenant

23  of good faith may not "be read to prohibit a party from doing that which is expressly permitted by an

24  agreement."  *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342,

25  374, 6 Cal.Rptr.2d 467 (1992).  "The courts will not imply a better agreement for parties than they

26  themselves have been satisfied to enter into, or rewrite contracts whenever they operate harshly. There

27  can be no implied covenant where the subject matter is completely covered by the existing contract."

28  *Vikco Ins. Services, Inc. v. Ohio Indem. Co.,* 70 Cal.App.4th 55, 70, 82 Cal.Rptr.2d 442 (1999).

1    Ms. Alcaraz faults the Wachovia defendants' challenge for failure to "describe with any

2    specificity why Ms. Alcaraz' good faith and fair dealing claim fails."

3    The (second) good faith and fair dealing cause of action fails to identify the particular contract

4    at issue.  Ms. Alcaraz apparently relies on the overall loan transaction.  Clearly, the loan documents

5    provided the Wachovia defendants rights to foreclose upon default.  Ms. Alcaraz is unable to allege that

6    that the Wachovia defendants are not able to foreclose upon her default.  The (second) breach of implied

7    covenant of good faith and fair dealing cause of action is dismissed with leave to amend.

8                          **WACHOVIA DEFENDANTS' MOTION TO STRIKE**

9                                    **F.R.Civ.P. 12(f) Standards**

10    The Wachovia defendants seek to strike the complaint's punitive damages claims, prayer and

11    supporting allegations.  More specifically, the Wachovia defendants seek to strike from the complaint:

12         1.    The words "fraud," "fraudulent," "fraudulently," "deceit," "deceptive," and "deceptively"

13               wherever they appear;

14         2.    The summary punitive damages paragraphs in the (second) good faith and fair dealing,

15               (third) TILA, (fourth) RESPA, (seventh) constructive fraud and (ninth) breach of

16               fiduciary duty causes of action; and

17         3.    Prayer "12.  For punitive damages."

18    The Wachovia defendants contend that the complaint fails to allege facts and elements to support

19    punitive damages under section 3294.

20    F.R.Civ.P. 12(f) empowers a court to strike from a pleading "any redundant, immaterial,

21    impertinent, or scandalous matter."  Motions to strike may be granted if "it is clear that the matter to be

22    stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Kentucky*

23    *Central Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D. Cal. 1992); *Colaprico v. Sun Microsystems, Inc.*, 758

24    F.Supp. 1335, 1339 (N.D. Cal. 1991).  "[T]he function of a [F.R.Civ.P.] 12(f) motion to strike is to avoid

25    the expenditure of time and money that must arise from litigating spurious issues by dispensing with

26    those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983);

27    *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, *Fogerty v.*

28    *Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023 (1994).  "[A] motion to strike may be used to strike any part

of the prayer for relief when the damages sought are not recoverable as a matter of law." *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1479, n. 34 (C.D. Cal. 1996).

An "immaterial" matter has no essential or important relationship to the claim for relief or defenses pleaded. *Fantasy, Inc.,* 984 F.2d at 1527; *Gilbert v. Eli Lilly & Co., Inc.*, 56 F.R.D. 116, 120, n. 5 (D. P.R. 1972); *Fleischer v. A.A.P., Inc.*, 180 F.Supp. 717 (D. Pa. 1958). An "impertinent" allegation is neither responsive nor relevant to the issues involved in the action and which could not be put in issue or given in evidence between the parties. *Gilbert*, 56 F.R.D. at 120, n. 6; *Burke v. Mesta Mach. Co.*, 5 F.R.D. 134 (D. Pa. 1946). An "impertinent" matter consists of statements that do not pertain and are unnecessary to the issues in question. *Fantasy, Inc.*, 984 F.2d at 1527.

Matters may be stricken to reduce trial complication or if challenged allegations are so unrelated to plaintiff's claims to be unworthy of consideration as a defense and their presence in the pleading will prejudice the party seeking to strike matters. *Fantasy, Inc.*, 984 F.2d at 1527. "[A] motion to strike may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law." *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1479, n. 34 (C.D. Cal. 1996). With these standards in mind, this Court turns to the Wachovia defendants' attack on the complaint's punitive damages claims.

**Corporate Liability For Punitive Damages**

The Wachovia defendants challenge the complaint for failure to properly plead punitive damages claims against a corporate defendant. The Wachovia defendants criticize the absence of allegations that "an officer, director or managing agent of defendant either directed, or else knew of and then directed, the purported conduct giving rise to the punitive damages."

Ms. Alcaraz defends her punitive damages claims on grounds that:

1. The alleged fraudulent actions "were apparently within the scope of corporate policy";

2. Wachovia's conduct "was intended to injure her financially and was carried out with conscious disregard of the rights of borrowers like her";

3. Wachovia's actions "subjected her to the threatened loss of her home in conscious disregard of her rights";

4. Wachovia "intentionally misrepresented the terms of her mortgage loan, deceived her

1          into signing for it, and concealed material facts, including the costs associated with the

2          loan, with the intent to deprive her of money"; and

3          5.     Wachovia acted "according to its business practices."

Section 3294 provides that in an action "for breach of an obligation not arising from contract," a plaintiff may seek punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."   Cal. Civ. Code, § 3294(a).   Section 3294(c)(1)–(3) defines:

          1.     "Malice" as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights and safety of others";

          2.     "Oppression" as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights"; and

          3.     "Fraud" as "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."

Punitive damages are "available to a party who can plead and prove the facts and circumstances set forth in Civil Code section 3294." *Hilliard v. A.H. Robbins Co.*, 148 Cal.App.3d 374, 392, 196 Cal.Rptr. 117 (1983).  "To support punitive damages, the complaint . . . must allege ultimate facts of the defendant's oppression, fraud, or malice." *Cyrus v. Haveson*, 65 Cal.App.3d 306, 316-317, 135 Cal.Rptr. 246 (1976).  Pleading the language in section 3294 "is not objectionable when sufficient facts are alleged to support the allegation." *Perkins v. Superior Court*, 117 Cal.App.3d 1, 6-7, 172 Cal.Rptr. 427 (1981).

In *G.D. Searle & Co. v. Superior Court*, 49 Cal.App.3d 22, 29, 122 Cal.Rptr. 218 (1975), the California Court of Appeal explained punitive damages pleading:

> When the plaintiff alleges an intentional wrong, a prayer for exemplary damage may be supported by pleading that the wrong was committed willfully or with a design to injure. . . . When nondeliberate injury is charged, allegations that the defendant's conduct was wrongful, willful, wanton, reckless or unlawful do not support a claim for exemplary damages; such allegations do not charge malice. . . . When a defendant must produce evidence in defense of an exemplary damage claim; fairness demands that he receive adequate notice of the kind of conduct charged against him.  (Citations omitted.)

"Allegations that the acts . . . were 'arbitrary, capricious, fraudulent, wrongful and unlawful,' like other

16

adjectival descriptions of such proceedings, constitute mere conclusions of law . . ." *Faulkner v. California Toll Bridge Authority*, 40 Cal.2d 317, 329, 253 P.2d 659 (1953); *see Letho v. Underground Construction Co.*, 69 Cal.App.3d 933, 944, 138 Cal.Rptr. 419 (1997) (facts and circumstances of fraud should be set out clearly, concisely, and with sufficient particularity to support punitive damages); *Smith v. Superior Court*, 10 Cal.App.4th 1033, 1042, 13 Cal.Rptr.2d 133 (1992) (punitive damages claim is insufficient in that it is "devoid of any factual assertions supporting a conclusion petitioners acted with oppression, fraud or malice."); *Brousseau v. Jarrett*, 73 Cal.App.3d 864, 872, 141 Cal.Rptr. 200 (1977) ("conclusory characterization of defendant's conduct as intentional, willful and fraudulent is a patently insufficient statement of 'oppression, fraud, or malice, express or implied,' within the meaning of section 3294").

Punitive damages are never awarded as a matter of right, are disfavored by the law, and should be granted with the greatest of caution and only in the clearest of cases. *Henderson v. Security Pacific National Bank*, 72 Cal.App.3d 764, 771, 140 Cal.Rptr. 388 (1977).

Turning to corporate defendants, section 3294(b) addresses requirements to impose punitive damages against employers:

> An employer shall not be liable for [punitive] damages . . . based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud or malice must be on the part of an officer, director, or managing agent of the corporation.

Section 3294 requires proof of wrongful conduct among corporate leaders: the "officer[s], director[s], or managing agent[s]." Cal. Civ. Code, § 3294(b); *Cruz v. HomeBase*, 83 Cal.App.4th 160, 166, 99 Cal.Rptr.2d 435 (2000). As the California Court of Appeal explained:

> This is the group whose intentions guide corporate conduct. By so confining liability, the statute avoids punishing the corporation for malice of low-level employees which does not reflect the corporate "state of mind" or the intentions of corporate leaders. This assures that punishment is imposed only if the corporation can be fairly viewed as guilty of the evil intent sought to be punished.

*Cruz*, 83 Cal.App.4th at 166, 99 Cal.Rptr.2d 435.

"Managing agents" are employees who "exercise[] substantial discretionary authority over

decisions that ultimately determine corporate policy." *White v. Ultramar, Inc.*, 21 Cal.4th 563, 573, 88 Cal.Rptr.2d 19 (1999).

An act of oppression, fraud or malice, by an officer, director or managing agent, is sufficient to impose liability on a corporate employer for punitive damages, without an additional showing of ratification by the employer. Cal. Civ. Code, § 3294(b); *Agarwal v. Johnson*, 25 Cal.3d 932, 950, 160 Cal.Rptr. 141 (1979), *overruled on other grounds*, *White*, 21 Cal.4th 563 at 574, n. 4, 88 Cal.Rptr.2d 19; *Kelly-Zurian v. Wohl Shoe Co., Inc.*, 22 Cal.App.4th 397, 420, 27 Cal.Rptr.2d 457, 469 (1994). The critical inquiry whether employees act in a managerial capacity is "the degree of discretion the employees possess in making decisions that will ultimately determine corporate policy." *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 822-823, 169 Cal.Rptr. 691 (1979); *see Kelly-Zurian*, 22 Cal.App.4th at 420, 27 Cal.Rptr.2d at 470 (evidence that a supervisor had power to terminate and supervise employee's performance was insufficient to establish managing agent).

The California Supreme Court has explained:

> We therefore conclude that in amending section 3294, subdivision (b), the Legislature intended that principal liability for punitive damages not depend on employees' managerial level, but on the extent to which they exercise substantial discretionary authority over decisions that ultimately determine corporate policy. Thus, supervisors who have broad discretionary powers and exercise substantial discretionary authority in the corporation could be managing agents. Conversely, supervisors who have no discretionary authority over decisions that ultimately determine corporate policy would not be considered managing agents even though they may have the ability to hire or fire other employees. In order to demonstrate that an employee is a true managing agent under section 3294, subdivision (b), a plaintiff seeking punitive damages would have to show that the employee exercised substantial discretionary authority over significant aspects of a corporation's business.

*White*, 21 Cal.4th at 576-577, 88 Cal.Rptr.2d at 29; *see Myers v. Trendwest Resorts, Inc.*, 148 Cal.App.4th 1403, 1437, 56 Cal.Rptr.3d 501 (2007) (determination whether a supervisor is a "managing agent" does not hinge on their "level" in the corporate hierarchy in that the critical inquiry is the degree of discretion the employees possess to make decisions that will ultimately determine corporate policy).

The Wachovia defendants argue that section 3294(b) requires "malice among corporate leaders" (officer, directors or managing agents) or ratification to require "'actual knowledge' that the renegade employee acted 'maliciously.'" The Wachovia defendants fault the complaint's absence of allegations that:

1.   Purported oppression, fraud or malice was committed by an identified officer, director or managing agent;

2.   The Wachovia defendants had advance knowledge of an employee's unfitness and employed him/her in conscious disregard of Ms. Alcaraz' rights; and

3.   The Wachovia defendants authorized or ratified wrongful conduct.

The Wachovia defendants are correct. The complaint's punitive damages allegations are, at best, conclusory and not close to satisfying section 3294(b) elements of advance knowledge, ratification or personal wrongdoing. The complaint identifies no individuals, other than Ms. Alcaraz, let alone an officer, director or managing agent of the Wachovia defendants. Much more is needed to plead properly punitive damages claims. Ms. Alcaraz points merely to Wachovia's alleged general business practice and offers nothing to suggest that she can satisfy section 3294(b) elements. She concedes that alleged "fraudulent actions" were "apparently" within the scope of corporate policy. Ms. Alcaraz' reliance on the Wachovia defendants' alleged wrongs is greatly insufficient. In the absence of Ms. Alcaraz' meaningful defense of her punitive damages claims, an attempt at amendment to satisfy section 3294(b) elements is unwarranted.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1.   DENIES the Wachovia defendants F.R.Civ.P. 12(b)(6) dismissal, except as ordered below;

2.   DISMISSES with leave to amend the (second) breach of implied covenant of good faith and fair dealing cause of action;[4]

3.   DISMISSES with leave to amend the (seventh) constructive fraud cause of action;[5]

4.   DISMISSES with prejudice the (eighth) UCL unfair business practices cause of action as preempted by HOLA;

5.   DISMISSES with prejudice the (ninth) breach of fiduciary duty cause of action as barred

---

[4]   This Court admonishes Ms. Alcaraz that an amended breach of implied covenant of good faith and fair dealing cause of action must satisfy F.R.Civ.P. 8(a).

[5]   This Court admonishes Ms. Alcaraz that an amended fraud cause of action must satisfy F.R.Civ.P. 9(b).

1    as a matter of law;

2    6.    STRIKES from the complaint:

3    a.    "deceptive and fraudulent" from Paragraph 16;

4    b.    "deceptively" from both places in Paragraph 20;

5    c.    "deceptively and fraudulently" from Paragraph 22;

6    d.    "fraud and deceit" from Paragraph 22;

7    e.    "fraudulent" from Paragraph 40(i);

8    f.    "fraudulently" from Paragraph 40(ii);

9    g.    "deceptively and fraudulently" from Paragraph 40(v);

10   h.    Paragraphs 42, 50 and 55 in their entirety;

11   i.    "fraud" from Paragraph 62;

12   j.    "fraudulently" from Paragraph 63;

13   k.    "deceit" and "fraudulent" from Paragraph 64;

14   l.    "deceit" and "fraudulent" from Paragraph 65;

15   m.    "fraud," "fraudulent," and "deceit" from Paragraph 66;

16   n.    "fraudulent" from Paragraph 70(i);

17   o.    "fraudulently" from Paragraph 70(ii);

18   p.    "deceptively and fraudulently" from Paragraph 70(v);

19   q.    Paragraph 75 in its entirety;

20   r.    "fraudulent" from Paragraph 81(i);

21   s.    "fraudulently" from Paragraph 81(ii);

22   t.    "deceptively and fraudulently" from Paragraph 81(v);

23   u.    "fraudulent" from Paragraph 85(ii);

24   v.    "fraudulently" from Paragraph 85(iii);

25   w.    "deceptively and fraudulently" from Paragraph 85(vi);

26   x.    Paragraph 90 in its entirety; and

27   z.    Paragraph 12 of the prayer in its entirety; and

28   7.    ORDERS Ms. Alcaraz, no later than February 3, 2009, to file and serve either: (1) a first

1   amended complaint to comply with this order; or (2) her statement that she will proceed

2   on her complaint subject to this order's dismissals and stricken portions; and

3   8.   ORDERS the Wachovia defendants, no later than February 19, 2009, to file either: (1)

4   a responsive pleading to Ms. Alcaraz' first amended complaint; or (2) an answer to her

5   complaint, if she files no first amended complaint.

6   IT IS SO ORDERED.

7   **Dated:   January 21, 2009**          _/s/ Lawrence J. O'Neill_
          UNITED STATES DISTRICT JUDGE